# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-1841V
### Filed: September 3, 2024

|  |  |
|---|---|
| KATHY STILLER, | Special Master Horner |
| Petitioner, | |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Rachelle Bishop, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING DAMAGES[1]

On December 14, 2020, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffered a Table Injury of Shoulder Injury Related to Vaccine Administration ("SIRVA") in her right shoulder following tetanus diphtheria and acellular pertussis ("TDaP") vaccination that she received on October 11, 2019. (ECF No. 1.) For the reasons discussed below, I now conclude petitioner is entitled to an award of $72,000.00 in compensation for actual pain and suffering and $621.57 for past unreimbursable expenses.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

## I.      Procedural History

On November 13, 2023, I issued a ruling on entitlement finding petitioner entitled to compensation for her SIRVA.  (ECF No. 38; 2023 WL 8539387.)  The procedural history up to that point is included within that ruling.  (ECF No. 38, pp. 3-4; 2023 WL 8539387, at *2-3.)  On December 12, 2023, petitioner filed a status report advising that the parties were unable to resolve damages informally and proposing that the issue be resolved based on written briefs.  (ECF No. 41.)  Petitioner filed a memorandum regarding her damages on March 5, 2024.  (ECF No. 43.)  Respondent filed his response on May 3, 2024.  (ECF No. 44.)  Petitioner did not file any reply.

I have determined that the parties have had a full and fair opportunity to present their cases and that, given the parties' assent, it is appropriate to resolve the appropriate amount of compensation for petitioner's damages on the existing record.  *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *see also Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record").  Accordingly, this matter is now ripe for resolution.

## II.      Factual History

The factual history is set forth in greater detail in the ruling on entitlement. (ECF No. 38, pp. 4-8; 2023 WL 8539387, at *3-6.)

Petitioner sought care for her SIRVA about two weeks following her vaccination. (Ex. 2, p. 11.)  At that time, she complained of bilateral arm pain, though worse in the right arm in which she had received her vaccination.  She had normal range of motion, albeit with pain, but reported weakness and difficulty lifting her arms.  She was prescribed a Medrol dosepak (a steroid treatment).  (*Id.* at 11-12.)  Petitioner saw an orthopedist about three weeks later.  (Ex. 3, p. 60.)  At that time, she had no tenderness, but had limited and painful range of motion with internal rotation, as well as positive signs of impingement and rotator cuff weakness.  (*Id.* at 61.)  Petitioner's x-ray showed some degenerative changes along with an anatomic variant, known as an os acromiale.  (*Id.* at 64.)

An MRI of petitioner's right shoulder was completed on November 23, 2019.  (Ex. 2, p. 79.)  The MRI revealed the following: (1) moderate tendinosis of the supraspinatus and infraspinatus with generalized partial thickness tearing and fraying; (2) insertional subscapularis tendinosis with partial thickness tearing; (3) an intact biceps tendon; (4) fraying of the posterior superior labrum; (5) moderate degenerative changes in the acromioclavicular joint, with a type II acromion, moderate inflammatory changes, unfused acromial apophysis, and os acromiale with edema at the synchondrosis; and (6) subacromial/subdeltoid bursitis with moderate glenohumeral effusion.  (*Id.* at 80.)

When petitioner returned to the orthopedist on December 2, 2019, she was recommended physical therapy.  (Ex. 3, p. 47.)  However, she did not begin physical

therapy until June 1, 2020.  (Ex. 3, pp. 41-43.)  At the time of her physical therapy evaluation, petitioner had tenderness, slightly reduced range of motion, and positive signs of impingement.  (*Id.*)  She attended nine physical therapy sessions between June and September.  (*Id.* at 14-40.)  However, petitioner remained symptomatic (Ex. 2, p. 6) and sought a second orthopedic opinion in November of 2020 (Ex. 6, pp. 5-6).

When petitioner saw the second orthopedist, she reported that "her symptoms began in 2019 after receiving a tetanus vaccine, recently worsening with weight lifting exercises."  (Ex. 6, pp. 5-6.)  "The pain is continuous and described as sharp.  The pain is located on the upper arm.  The pain is worse with activity, exercises including burpies [*sic*], driving, raising the arm upwards.  Anti-inflammatories helps alleviate the pain.  Associating symptoms include weakness and shooting pain, pain at night."  (*Id.* at 5.)  She had mild tenderness over right the acromioclavicular joint, biceps, and lateral rotator cuff insertion, as well as positive Hawkins and Neers tests.  (*Id.* at 6.)  Petitioner received a subacromial cortisone injection.  (*Id.* at 7.)

Petitioner returned to the same orthopedist for a follow up on December 14, 2020.  (Ex. 6, p. 8.)  She reported that "[s]he has been trying to do exercises including planks."  (*Id.*)  The prior subacromial cortisone injection "provided relief although symptoms persist at a lower intensity."  (*Id.* at 9.)  Petitioner received a second cortisone injection on January 25, 2021.  (Ex. 8, p. 2.)  She was also continuing to do home exercises.  (*Id.*)  She was instructed to continue her home exercises and to follow up on an as needed basis.  (*Id.* at 3.)  No further medical records were filed.

Petitioner filed two affidavits in this case.  (Exs. 4, 7.)  In both affidavits, petitioner indicates that she has ongoing limitations.  In the first affidavit she indicates, "I continue to experience pain, weakness, and limited range of motion in my right shoulder."  (Ex. 4, ¶ 7.)  In the second affidavit she states, "Two (2) years later I am still unable to use my arm at the same level I was using it prior to receiving the TDaP vaccination and probably never will be."  (Ex. 7, ¶ 6.)

### III.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000."  § 300aa-15(a)(4).  Additionally, a petitioner may recover

actual unreimbursable expenses incurred before the date of judgment award such expenses which--

(i) resulted from the vaccine-related injury for which petitioner seeks compensation,

(ii) were incurred by or on behalf of the person who suffered such injury, and

> (iii) were for diagnosis, medical or other remedial care, rehabilitation
> . . . determined to be reasonably necessary."

§ 300aa-15(a)(1)(B).  Finally, petitioners who have had their earning capacity adversely impacted due to their vaccine injury may receive "compensation for actual and anticipated loss of earnings determined in accordance with generally recognized actuarial principles and projections."  § 300aa-15(a)(3)(A).  The petitioner bears the burden of proof with respect to each element of compensation requested.  *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress.  *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (reasoning that "[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) (concluding that "the assessment of pain and suffering is inherently a subjective evaluation").  In general, factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Human Servs.*, No. 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may also consider prior awards when determining what constitutes an appropriate award of damages.  *See, e.g., Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case"); *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (explaining that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).  Importantly, however, while potentially persuasive, decisions regarding prior awards are not binding.  *See Nance v. Sec'y of Health & Human* Servs., No. 06-0730V, 2010 WL 3291896, at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999).

Based on prior experience within the SPU as of the beginning of 2024, the overall spectrum of proffered SIRVA awards extends from $10,000.00 to $1,845,047.00. *Langner v. Sec'y of Health & Human Servs.*, No. 20-1965V, 2024 WL 3422749, at *3 (Fed. Cl. Spec. Mstr. June 11, 2024).  Eliminating outliers, the first and third quartiles span from $61,338.13 to $110,000.00.  (*Id.*)  The median is $81,049.85.  (*Id.*)  Damages

awards based on decisions by special masters run slightly higher, with the first and third quartile range being from $70,000.00 to $125,007.45 and a median of $88,974.23.  (*Id*.)

## IV.    Party Contentions

Petitioner requests $80,000.00 for past pain and suffering and $621.57 for past out-of-pocket expenses.  (ECF No. 43.)  Respondent agrees petitioner's request for out-of-pocket expenses is appropriate, but contends that $55,000.00 would be a more appropriate award for petitioner's past pain and suffering.  (ECF No. 44.)

Petitioner characterizes her SIRVA as "moderate."  (ECF No. 43, p. 7.)  Petitioner stresses that she had immediate pain and reduced range of motion that resulted in prompt (14-days post-vaccination) initiation of treatment.  Her period of treatment was 15 months.  She was still reporting pain of 5 out of 10 at her final orthopedic encounter and remained unable to return to her prior physical fitness routine.  (*Id*. at 7-8.)  Petitioner cites four prior cases as comparable:  *Coluccio v. Sec'y of Health & Human Servs*., No. 19-1684V, 2022 WL 17849579 (Fed. Cl. Spec. Mstr. Dec. 15, 2022) (awarding $80,000.00 where petitioner sought care after 27 days, had one therapeutic injection, 19 physical therapy sessions, and 8 months of total treatment); *Williams v. Sec'y of Health & Human Servs*., No. 19-1420V, 2024 WL 914908 (Fed. Cl. Spec. Mstr. Jan. 30, 2024) (awarding $80,000.00 where petitioner sought treatment after 21 days, had two therapeutic injections, 19 physical therapy sessions, and 7.5 months of treatment); *Smith v. Sec'y of Health & Human Servs*., No. 21-409V, 2023 WL 9288086 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) (awarding $77,000.00 where petitioner sought treatment after 28 days, had one therapeutic injection, 9 physical therapy sessions, and 18 months of treatment); *Decoretz v. Sec'y of Health & Human Servs*., No. 19-0391V, 2021 WL 2346468 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $75,000.00 where petitioner sought treatment after 43 days, had no therapeutic injections, 17 sessions of physical therapy, and 15 months of treatment).  (ECF No. 43, pp. 6-7, 9.)  Petitioner indicates her case is especially similar to the prior *Smith* case.  (*Id*. at 9.)  However, she asserts she should receive slightly more compensation when compared to *Smith*, because she sought treatment more quickly, had an additional therapeutic injection, and had a shorter gap in treatment (six vs eight months).

Whereas petitioner characterized her condition as "moderate," respondent urges that it was "mild and limited."  (ECF No. 44, p. 9.)  Although respondent agrees petitioner sought treatment about two weeks post-vaccination, he stresses that the physical exam at that time demonstrated a mild injury with normal range of motion and strength.  (*Id*.)  Further, petitioner's clinical picture was clouded by degenerative changes affecting both shoulders that cannot be attributed to her vaccination.  (*Id*. at 9-10.)  Respondent stresses that petitioner tolerated her condition for six months before eventually acting on her physical therapy referral in June of 2020, suggesting this should be factored into her award.  (*Id*. at 10 (quoting *Shelton v. Sec'y of Health & Human Servs*., No. 19-279V, 2021 WL 2550093, at *7 (Fed. Cl. Spec. Mstr. May 21, 2021), for the proposition that "the fact that Petitioner could cope with her injury for such a long period of time counsels in favor of a lower pain and suffering award").)  Once she

began physical therapy, her condition was responsive to treatment.  (*Id.*)  At her final visit, petitioner reported pain of between 2-5 out of ten, and displayed forward flexion of 160 degrees, external rotation of 45 degrees, and normal strength.  She did not return to treatment after a second therapeutic injection in January of 2021.  (*Id.* at 11.)  Respondent argues the cases cited by petitioner are distinguishable.  (*Id.* at 12-14.)  Instead, respondent cites three other cases he views as more comparable:  *Horton v. Sec'y of Health & Human Servs.*, No. 20-1166V, 2022 WL 1421847 (Fed. Cl. Spec. Mstr. Mar. 25, 2022) (awarding $60,000.00 where petitioner had one therapeutic injection, 8 physical therapy sessions, and an 8-month clinical course); *Norton v. Sec'y of Health & Human Servs.*, No. 19-1432V, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $55,000.00 where petitioner had one steroid injection, 23 physical therapy sessions, and 7 months of active treatment); *Clendaniel v. Sec'y of Health & Human Servs.*, No. 20-213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021) (awarding $60,000.00 where petitioner received two steroid injections, two arthrocentesis procedures, no physical therapy, and had 14 months of treatment).  (*Id.* at 15-16.)

## V.   Analysis

I am mindful of prior decisions regarding damages for SIRVA, including those cited by the parties.  However, I do not merely rely on any prior decision to determine the amount of petitioner's damages in this case.  Instead, I have reviewed previous SIRVA awards, the arguments presented by the parties, and the totality of the evidentiary record.  The primary considerations informing pain and suffering in SIRVA cases is the severity and duration of the shoulder pain.  Numerous aspects of a petitioner's medical history potentially speak to these issues, including the total duration of the petitioner's pain, the total duration of petitioner's reduced range of motion, the length of time over which the petitioner actively treated the condition, the duration and outcome of physical therapy, the modalities of treatment (*e.g.*, steroid injections, surgeries, etc.), the severity of MRI or surgical findings, subjective reports of pain levels, and the ultimate prognosis.

I agree with respondent that there are several factors in this case that suggest petitioner's injury is closer to mild, rather than moderate.  Although petitioner did initially seek treatment with reasonable promptness, her initial medical records document that she largely maintained full range of motion, despite her discomfort.  (Ex. 2, p. 12; Ex. 3, p. 61.)  Thereafter, she delayed in following up on the recommended physical therapy for six months.  I agree that this suggests her symptoms were mild and manageable.  *E.g.*, *Ratzlaff v. Sec'y of Health & Human Servs.*, No. 18-1017V, 2023 WL 4072909, at *8 (Fed. Cl. Spec. Mstr. May 24, 2023) (observing that, "despite the overall length of time that petitioner has suffered her condition, and despite her multiple surgeries over those years, respondent is persuasive in stressing that her numerous substantial gaps in treatment reflect that her condition was not consistently severe throughout that period as she contends").  Moreover, while petitioner did curtail her robust exercise routine (no longer attending "bootcamp" exercise programs), the records reflect that she was weight

lifting and doing burpees even while she was still actively treating.  (Ex. 6, pp. 5-6.)
Accordingly, petitioner's SIRVA was relatively mild.

However, this is not to say that petitioner was free of either pain or impairment.
Although petitioner's delay in pursuing physical therapy is not well explained, the
subsequent records do reflect that petitioner was symptomatic even after physical
therapy.  She ultimately sought a second orthopedic opinion and was treated with two
therapeutic injections.  (Ex. 6, pp. 5-9; Ex. 8, pp. 2-3.)  Even if petitioner's lack of
treatment between December of 2019 and June of 2020 suggests petitioner's
symptoms were manageable, the records reflect overall that she experienced a
continuous course of shoulder symptoms from October of 2019 through January of
2021, when she received her second therapeutic injection and thereafter stopped formal
treatment.  Accordingly, I agree with petitioner that petitioner's relevant treatment period
spans about 15 months.

I am not persuaded by respondent's argument that petitioner's clinical picture
was clouded by her degenerative changes.  In the ruling on entitlement, I rejected
respondent's argument that petitioner's right shoulder pain was due to her degenerative
condition, explaining that the treating orthopedist had opined that the vaccination
exacerbated her underlying pathology.  (ECF No. 38, p. 12 (citing Ex. 2, p. 39).)
Although petitioner did have some complaints of bilateral shoulder pain, as well as knee
pain, her medical record confirms she had no prior symptoms in her right shoulder.

The overall course of petitioner's condition is very similar to that of the *Smith*
petitioner, as highlighted by petitioner.  *Smith*, 2023 WL 9288086, at *2-4.  However, the
*Smith* petitioner reported higher levels of pain.  Although the *Clendaniel* petitioner had a
similar overall duration of treatment, the evidence in that case showed that he
responded well to only intermittent treatment and had "little to no pain" and "significant
relief" from his therapies for long periods.  2021 WL 4258775, at *8.  Thus, for example,
it was never necessary for the *Clendaniel* petitioner to undergo physical therapy.  *Id.*  I
am not persuaded by petitioner's comparison to *Decoretz*, *Williams*, or *Collucio*, as
these cases involved more severe pain manifesting over a shorter course.
Respondent's comparison to *Horton* and *Norton* likewise fail to reflect the comparatively
longer duration of this petitioner's clinical course.

Considering all of the above, I find that an award of $72,000.00 represents
reasonable compensation for petitioner's past pain and suffering.

## VI.     Conclusion

In light of the above, **I award petitioner a lump sum payment of $72,621.57,
representing $72,000.00 for actual pain and suffering and $621.57 for past
unreimbursable expenses, in the form of a check payable to petitioner**.  This
amount represents compensation for all damages available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.